UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEEN MARIE BENS, | No. 2:19-cv-01672 AC |
| Plaintiff, | |
| v. | **ORDER** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on January 11, 2016.  Administrative Record ("AR") 419-420.[2] The disability onset date was alleged to be March 16, 2001.  Id.  The application was disapproved

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).
[2] The AR is electronically filed at ECF Nos. 8-3 to 8-40 (AR 1 to AR 2524).

1

1   initially and on reconsideration. AR 341-43; 348-53. On January 17, 2018, ALJ Jane A.

2   Maccione presided over the hearing on plaintiff's challenge to the disapprovals. AR 253-310

3   (transcript). Plaintiff, who appeared with her counsel Eric Patrick, was present at the hearing.

4   AR 256. Cathleen Spencer, a Vocational Expert ("VE"), also testified. Id.

5       On July 17, 2018, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d)

6   of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 16-30 (decision), 31-36 (exhibit list). On

7   July 5, 2019, the Appeals Council denied plaintiff's request for review, leaving the ALJ's

8   decision as the final decision of the Commissioner of Social Security. AR 1-5.

9       Plaintiff filed this action on August 27, 2019. ECF No. 1; see 42 U.S.C. § 405(g). The

10  parties consented to the jurisdiction of the magistrate judge. ECF No. 19. The parties' cross-

11  motions for summary judgment, based upon the Administrative Record filed by the

12  Commissioner, have been fully briefed. ECF Nos. 14 (plaintiff's summary judgment motion), 19

13  (Commissioner's summary judgment motion).

14  ## II.  FACTUAL BACKGROUND

15      Plaintiff was born in 1970, and accordingly was, at age 30, a younger person under the

16  regulations at the alleged onset date.[3] AR 419. Plaintiff has four or more years of college,

17  completed in 1993, and can communicate in English. AR 505, 507. Plaintiff obtained her real

18  estate license in 2003. AR 507. She has past work as a sensory specialist for consumer products,

19  real estate worker, in home care worker, and dog walker. Id. Plaintiff sustained a gunshot wound

20  to the head in 2001, which caused visual field and neurocognitive impairments. AR 23.

21  ## III.  LEGAL STANDARDS

22      The Commissioner's decision that a claimant is not disabled will be upheld "if it is

23  supported by substantial evidence and if the Commissioner applied the correct legal standards."

24  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the

25  Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews

26  v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

27  ////

28  ---

[3] See 20 C.F.R. § 404.1563(c) ("younger person").

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

////

////

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act on December 31, 2018.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since March 16, 2001, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: neurocognitive impairment secondary to traumatic brain injury; loss of peripheral vision in the left eye; and insomnia (20 CFR 404.1520(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to jobs that do not require peripheral vision on the left side or unrestricted field of vision in the left eye. She is limited to simple, routine tasks and simple workplace decisions (defined in the Dictionary of Occupational Titles as Specific Vocational Preparation levels (SVP) 1 and 2). She is limited to a low-stress work environment, defined as involving a structured work environment with little change to the setting and routine, and work that does not involved a significat problem-solving component. She is limited to brief and superficial interaction with the public. She is limited to work that does not require the hands to work independently, in the sense of on two different tasks. She must be protected from workplace hazards, such as unprotected heights and dangerous moving mechanical parts. She requires written instructions to be posted or must be permitted to carry written instructions. She also requires a relaxed production pas, defined as capable of maintaining 95% of normal production rate.
>
> 6. [Step 4] The claimant has no past relevant work (20 CFR 404.1565).

7. [Step 5] The claimant was born [in 1970] and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are job that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2001, through the date of this decision (20 CFR 404.1520(g)).

AR 19-29. As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 29.

## VI. ANALYSIS

Plaintiff alleges that the ALJ failed to give reasons supported by substantial evidence for rejecting the opinions of examining physician Dr. David O' Grady. ECF No. 14. Plaintiff asks the undersigned to reverse and award benefits. Id. at 18.

A. The Medical Evidence

The ALJ considered the medical opinions of (1) neurologic consultative examiner Farah M. Rana, M.D., (2) two state agency medical consultants, (3) examining psychologist David O. Grady, (4) consultative mental health examiner Patricia Spivey, Psy. D., and (5) treating physician Shree Lakshmi K. Bhaskar, M.D. AR 25-26. Plaintiff, who sustained a gunshot wound to the head in 2001, complains of impaired vision in the left eye, cognitive problems including trouble organizing, planning, completing detailed tasks, concentrating, paying attention, understanding and remembering information, following instructions, multitasking, maintaining pace, dealing with stress, handling changes in routine, controlling impulses, and sleeping. AR 23, 274-80, 284, 290-92. She alleges that she needs to nap often during the day and take many breaks, and that her medications cause side effects including fatigue, dry mouth, headache, concentration problem, and sleep problems. Id.

The ALJ gave great weight to the opinion of Dr. Rana, who conducted a neurological examination on June 10, 2014 and concluded that plaintiff had no physical limitations but should avoid activities requiring visual precision. AR 25, 682-84. The ALJ gave some weight to the consultative medical consultants, who opined that plaintiff did not have any physical restrictions, finding that they did not adequately consider plaintiff's vision loss in the left eye. AR 25, 312-22, 328-38. The ALJ gave little weight to the opinion of mental consultative examiner Dr. Spivey, who opined that plaintiff had no significant mental limitations, finding this conclusion in conflict with the neuropsychological findings in the medical record. AR 25, 685-88. The ALJ also gave little weight to treating physician Dr. Bhaskar, who concluded that plaintiff was unable to return to work, could not stay on task, and would have difficulty maintaining focus and handling stress. AR 26, 675-76. The ALJ found Dr. Bhaskar's opinion contradicted by psychological tests done during the adjudicative period, plaintiff's activities of daily living, plaintiff's ability to drive without restrictions, and plaintiff's work activities after the alleged onset date. AR 26.

Dr. O'Grady examined plaintiff on August 27, 2015. He found that plaintiff could perform simple and routine tasks, but she would have serious difficulty completing a normal workday or workweek without interruptions from psychologically based symptoms, maintaining appropriate behavior, paying attention for more than 2 hours at a time, taking appropriate precautions for normal hazards, and completing tasks in a timely manner. AR 25, 1463-71, 2314-16. The ALJ gave great weight to the portion of the opinion stating plaintiff could perform simple and routine tasks. AR 26. However, the ALJ gave little weight to the remainder of Dr. O'Grady's opinion, finding as follows:

> However, the portion of the opinion regarding the claimant's difficulty completing a normal workday or workweek, handling social interaction, maintaining attention, adapting to hazards, and completing tasks in a timely manner is given little weight because it is contradicted by the generally adequate emotional and behavioral functioning that the claimant exhibited during the adjudicative period, as discussed in detail above (Exhibits 2F, 5F, 7F, 8F, 9F, 10F, 11F, 12F, and 13F). This portion of the opinion is also contradicted by the claimant's generally adequate attention span (Exhibits 5F, 9F/6, 9F/22, 9F/107, 9F/141, 9F/169-170, 11F/5, and 13F). In addition, the claimant generally can carry out tasks adequately when she uses written reminders such as lists and schedules (Exhibit 13F/5 and hearing testimony). Furthermore, this portion of the opinion is

> inconsistent with the claimant's generally adequate social activities and her work activities after the alleged onset date (Exhibits 6D-10D, SF, 13F, and hearing testimony). Finally, Dr. Grady stated that the claimant was permanently disabled, but this statement is contradicted by the medical evidence as discussed above and a finding of disability is an ultimate issue that is reserved to the commissioner (20 CFR 404.1527(e)).

AR 26.

### B.  Principles Governing the ALJ's Consideration of Medical Opinion Evidence

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.[4] Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996), as amended (Apr. 9, 1996).

> Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).  "The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298–99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

////

---

[4] There have been recent updates to the rules on medical sources; this section of the code applies to claims filed before March 27, 2017. See 20 C.F.R. § 404.1527.  Plaintiff's claims were filed prior to 2017 and are therefore not impacted by the changes.

C. <u>The ALJ Did Not Err in Assigning Little Weight to Portions of Dr. O'Grady's Opinion</u>

As discussed above, the ALJ accorded partial weight to Dr. O'Grady's opinion. AR 26. Upon careful review of the opinion and the record, the undersigned finds the ALJ's conclusion is supported by substantial evidence and the ALJ therefore did not err. The ALJ acted within her discretion by crediting some parts of Dr. O'Grady's opinion and not others; "[i]t is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" <u>Magallanes v. Bowen</u>, 881 F.2d 747, 753 (9th Cir. 1989) (citations omitted). The ALJ found Dr. O'Grady's opinion that plaintiff could perform simple work was consistent with neuropsychological test results, and thus entitled to weight because consistent with the record. AR 26; <u>see</u> 20 C.F.R. § 404.1527(c)(4) (ALJ considers how consistent an opinion is with the other evidence in the record); <u>Thomas</u>, 278 F.3d at 957 (non-treating source opinion is substantial evidence where it is supported by independent evidence in the record).

The ALJ gave little weight to other parts of Dr. O'Grady's opinion, including his conclusion that plaintiff would have difficulty completing a normal workday and workweek, handling social interaction, maintaining attention, completing tasks in a timely manner, finding these conclusions inconsistent with her functioning, her attention span, her ability to complete tasks with written reminders or instructions, and her social activities and work activity. AR 26; <u>see</u> 20 C.F.R. § 404.1527(c)(4); <u>Ford v. Saul</u>, 950 F.3d 1141, 1156 (9th Cir. 2020) (affirming ALJ's rejection of an examining source's opinion for being inconsistent with the claimant's performance at work and other activities); <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming ALJ's rejection of opinions for being inconsistent with treatment notes and other assessments of the claimant's functioning); <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001) (affirming ALJ's rejection of an opinion for being inconsistent with treatment notes and with the claimant's activities).

Plaintiff takes issue with the ALJ's citation to entire exhibits to support her conclusions. Given the detailed discussion of the medical record earlier in the decision, this was not error. Although pin citations would have been helpful, the ALJ did provide support in the record for her conclusions both by referencing the exhibits when discussing Dr. O'Grady's opinion and by

discussing the medical history in detail before reaching opinion evidence. For example, the ALJ noted earlier in her decision that plaintiff had numerous neuropsychological and psychological evaluations with test results showing generally mild deficits. See AR 20-21, 24, 26 (citing Exhibits 2F 14-15, 8F, 11F 143-44, 13F); see also AR 633-34, 686- 87, 1228-29, 1468-70. The ALJ also cited evidence that plaintiff had no memory impairment in January 2018. See AR 20, 24 (citing 18F3); see also AR 2316. The ALJ cited mental status exams and remarks from medical records that consistently showed normal fund of knowledge, a pleasant, polite, and cooperative demeanor, and normal thought process, normal thought content, normal alertness and orientation, adequate insight, and adequate judgment. AR 20, 21, 22, 24, 26 (citing 2F, 5F, 7F, 8F, 9F, 10F, 11F, 13F, 16F, 19F); see also AR 632-33, 683, 694, 710, 720, 725, 730, 747, 752, 761, 766, 771, 776, 781, 787, 795, 811, 829, 857, 907, 934-35, 948, 959, 967, 969, 970, 972, 973, 975, 978, 980, 987, 992, 994, 996, 999, 1468, 1900, 1997, 2004, 2068.

The ALJ also found Dr. O'Grady's conclusions inconsistent with plaintiff's social activities and work life, which included passing a real estate licensing examination and working briefly as a realtor, assisting an elderly man with household chores, working a two-year contract for Clorox, and teaching weekly religion classes. See AR 26 (citing the report of Dr. Spivey [AR 685-88], the report of Dr. O'Grady [AR 2314-16], and testimony from the hearing [AR 260-70]). An ALJ may consider a plaintiff's activities of daily living in making her determinations. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009). The records cited by the ALJ here provided ample evidence to support her finding.

Finally, plaintiff's references a post-decision opinion from Kristin Jacobson Para, Psy.D. (ECF No. 14 at 15-16), but fails to identify a basis for remand. Dr. Para's opinion (AR 245-252), which was issued three months after the ALJ's decision and accepted into the record by the Appeals Council, is part of the record before the undersigned. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012). However, an opinion that post-dates an ALJ's decision is "less persuasive." See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996). The Ninth Circuit has continued to apply this rule even after the decision in Brewes. See Berkebile v. Berryhill, 714 F. App'x 649, 651 (9th Cir. 2017) (unpublished) (applying the Macri rule post-

Brewes and rejecting argument that a treating source opinion submitted after the ALJ's decision provided a basis for remand).  Here, Dr. Para's assessment does not alter the outcome because her conclusions were admittedly not based on a "comprehensive neuropsych evaluation" but instead a "brief cognitive screening" (AR 247).  Accordingly, Dr. Para's opinion does not affect the sufficiency of the ALJ's basis for her conclusions.  Dr. Para's opinion, which plaintiff obtained only after receiving an unfavorable decision from the ALJ, therefore does not provide a basis for remand.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16), is GRANTED;

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: October 14, 2020

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE